IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADEX GLOBAL MASTER FUND SPC LTD., and TRADEX GLOBAL ADVISORS LLC, <br><br> Appellants, <br><br> v. <br><br> BENJAMIN PUI-YUN CHUI, <br><br> Appellee. | No. C 15-04744 WHA <br> Br. No. 12-30953 HLB <br> Adv. Proc. No. 12-3102 HLB <br><br><br><br><br><br> **ORDER AFFIRMING DECISION OF BANKRUPTCY COURT** |

### INTRODUCTION

In this appeal of an adversary proceeding relating to appellee's bankruptcy proceedings, appellants contend that the bankruptcy court should have given preclusive effect to a cease and desist order from the Securities and Exchange Commission. For the reasons stated below, the decision of the bankruptcy court is **AFFIRMED**.

### STATEMENT

Appellee Benjamin Pui-Yun Chui was an investment advisor registered with the Securities and Exchange Commission who managed (via an investment management company) several segregated portfolio funds. Among the funds that Chui managed was the American Pegasus Auto Loan Fund.

Appellant Tradex Global Master Fund SPC, Ltd., operated as a segregated portfolio company, and appellant Tradex Global Advisors LLC was the investor for the segregated portfolio company (collectively, "Tradex"). In 2006, Tradex began evaluating whether to invest

in APALF.  Throughout 2006 and 2007, Chui and his colleagues made several presentations to Tradex encouraging it to invest in APALF and issued an offering memorandum.  The presentations and offering memorandum promoted APALF as a niche hedge fund comprising sub-prime auto loans that sourced its assets from multiple auto-loan suppliers.

Tradex invested nearly two million dollars in APALF with four separate investments between March 2007 and August 2008.  Although Tradex redeemed some of its investment in the regular course of business without problem, when it sought to redeem all that remained of its investment in late 2008, the investment had been lost.

In 2009, the Securities and Exchange Commission conducted an audit of Chui's business dealings and opened a formal investigation in 2010.  Before the SEC filed formal charges, Chui offered to settle with the SEC.  In December 2010, the SEC issued an "Order Instituting Administrative and Cease and Desist Proceedings."  The order set forth the following findings, noting that Chui, his colleagues, and his investment funds consented to the order "without admitting or denying the findings [t]herein" (Appx. Exh. 11 at 220).

The SEC order found as follows.  In June 2007, Chui, via a holding company, bought Synergy Acceptance Corp., which supplied portfolios of auto loans to APALF.  Chui financed the purchase with more than eighteen million dollars from APALF, including a loan of more than thirteen million dollars to finance the acquisition of Synergy Acceptance.  Synergy Acceptance became the sole supplier of auto loans and servicing for APALF, and Synergy Acceptance derived virtually all of its income from APALF.  This created a pervasive conflict of interest.  Chui and his colleagues did not disclose the purchase of Synergy Acceptance to the independent directors of Chui's investment management company until March 2009, and investors did not learn of it until the SEC's audit in April 2009.

The SEC order further found that between 2007 and 2009, Chui directed APALF to loan approximately twelve million dollars (unsecured) to several other funds operated by his investment management company.  This generated a further conflict of interest, and Chui did not apprise the independent directors of his investment fund of these loans.

Accordingly, the SEC found that although the offering memorandum for APALF indicated that its objective was to purchase only sub-prime auto loans, United States Treasury securities, and interest-rate derivatives, forty percent of APALF's assets consisted of loans to Chui's investment company, its parent, and another fund — not auto loans.

Meanwhile, the SEC order found, Chui continued to represent that APALF sourced its auto loans from multiple independent funds (not solely Synergy Acceptance) and never disclosed his conflict of interest due to his stake in Synergy Acceptance or APALF's assets that did not meet its stated objectives. Thus, the SEC concluded that Chui had engaged in fraudulent conduct in violation of various securities laws and ordered Chui to cease and desist from engaging in further similar conduct and from working as an investment advisor.

As stated, Chui consented to entry of the SEC order but did not admit or deny the facts represented therein, as follows (Appx. Exh. 11 at 2):

> In anticipation of the institution of these proceedings, Respondents have submitted Offers of Settlement (the "Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, Respondents consent to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings . . . .

Chui petitioned for Chapter 7 bankruptcy in 2012. Chui's bankruptcy case proceeded before Judge Thomas E. Carlson (Bk. Case No. 12-30953). During the pendency of Chui's bankruptcy proceeding, Tradex commenced the instant adversary proceeding against Chui seeking an exception to discharge in his bankruptcy. Judge Hannah L. Blumenstiel heard the adversary proceeding in the bankruptcy court (Adv. Proc. Case No. 12-3102).

In its complaint, Tradex alleged that had it known the true facts of Chui's conduct as reflected in the SEC order, it would not have invested in APALF or would have withdrawn its investment earlier. Tradex sought a determination that its claim for damages resulting from Chui's alleged misrepresentations could not be discharged in his bankruptcy proceedings.

Tradex moved for summary judgment that its damages from Chui's conduct were not dischargeable in bankruptcy. Tradex argued, *inter alia*, that the SEC's order preclusively

established a debt resulting from a violation of securities law and thus could not be discharged in bankruptcy. Following full briefing, the bankruptcy court issued a tentative ruling denying Tradex's motion because the SEC order did not meet the requirements for collateral estoppel against Chui (Appx. Exh. 14). Oral argument was held in January 2015. At oral argument, Tradex asked the bankruptcy court to consider an academic article and a decision from the Seventh Circuit, raised for the first time in its reply and not addressed in the tentative ruling (Appx. Exh. 15 at 279).

In its final order on Tradex's motion for summary judgment, the bankruptcy court thoroughly examined the authority cited for the first time in Tradex's reply and found it unpersuasive. Thus, the bankruptcy court's order held that the SEC order did not preclusively establish a non-dischargeable securities violation and factual disputes existed requiring a trial.

After a two-day trial on the merits and post-trial briefing, the bankruptcy court issued a memorandum opinion finding that the evidence insufficient to establish that Chui had committed the alleged securities violations (Appx., Exh. 22). Judgment in favor of Chui was entered accordingly (Appx., Exh. 23).

Tradex now appeals the denial of its motion for summary judgment, contending that the bankruptcy court should have given the SEC order preclusive effect. Tradex's appeal does *not* concern the findings and conclusions following the trial or any other basis for the denial of its motion for summary judgment. This order follows full briefing.

**ANALYSIS**

This Court has jurisdiction over Tradex's appeal of the bankruptcy court's final judgment pursuant to Section 158(a)(1) of Title 28 of the United States Code. The bankruptcy court's denial of Tradex's motion for summary judgment is properly reviewed on appeal from final judgment following a trial on the merits inasmuch as the issue raised — whether the bankruptcy court should have given preclusive effect to the SEC order — is solely a question of law that, if not made, would have required granting the motion. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014). A district court reviews the bankruptcy

4

court's resolution of questions of law *de novo*. *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009).

The only issue on appeal is whether the bankruptcy court should have given the SEC order preclusive effect pursuant to Section 523(a)(19) of Title 11 of the United States Code. Tradex has *not* appealed the bankruptcy court's determination that disputes of fact precluded summary judgment or the bankruptcy court's findings of fact and conclusions of law made following the trial.

Section 523(a)(19) provides that bankruptcy does not discharge a debt that:

> (A) is for —
>
> > (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
> >
> > (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) results, before, on, or after the date on which the petition was filed, from —
>
> > (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
> >
> > (ii) any settlement agreement entered into by the debtor; or
> >
> > (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

In other words, Section 523(a)(19) establishes that a debt is not dischargeable through bankruptcy if both of two elements are satisfied. *First*, the debt must be "for" a securities law violation or fraud in connection with the sale of a security. *Second*, the debt must "result from" some judicial or administrative proceeding or a settlement agreement.

In a section-by-section analysis of the Criminal Fraud Accountability Act of 2002, which added Section 523(a)(19) to the Bankruptcy Code, one of the Act's authors, Senator Patrick Leahy, discussed the issue targeted by that section as follows:

> Section 3 of this bill would amend the Bankruptcy Code to make judgments and settlements based upon securities law violations

5

> non-dischargeable, protecting victims' ability to recover their losses.  Current bankruptcy law may permit such wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations.  This loophole in the law should be closed to help defrauded investors recoup their losses and to hold accountable those who violate securities laws after a government unit or private suit results in a judgement or settlement against the wrongdoer.  State securities regulators have indicated their strong support for this change in the bankruptcy law.  Under current laws, state regulators are often forced to "reprove" their fraud cases in bankruptcy court to prevent discharge because remedial statutes often have different technical elements than the analogous common law causes of action.  Moreover, settlements may not have the same collateral estoppel effect as judgments obtained through fully litigated legal proceedings.  In short, with their resources already stretched to the breaking point, state regulators must plow the same ground twice in securities fraud cases.  By ensuring securities law judgments and settlements in state cases are non-dischargeable, precious state enforcement resources will be preserved and directed at preventing fraud in the first place.

S.Rep. No. 107-146 at 16 (2002).

In its motion for summary judgment below, Tradex contended the SEC order preclusively satisfied the requirements of Section 523(a)(19), under the doctrine of collateral estoppel.  The bankruptcy court rejected that argument, which rejection forms the basis for this appeal.

> Generally, collateral estoppel as to an issue is appropriate when:
>
> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

*In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000).

The bankruptcy court held that in light of the stated limitations of the SEC order, namely that it was entered "[s]olely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party" and that Chui consented to its entry "without admitting or denying the findings [t]herein" the SEC order's conclusions regarding Chui's alleged securities violations had not been "actually litigated" and so could not give rise to collateral estoppel as to whether Chui violated any securities laws.  The bankruptcy court further held that the SEC order, even if it *could* be

6

1   conclusive evidence of a securities violation, did not establish a debt owed by Chui *to Tradex*
2   — it made no mention of Tradex at all.   Thus, because the debt allegedly owed to Tradex did
3   not "result from" the SEC order, that order did not satisfy Section 523(a)(19). Since factual
4   issues remained, Tradex's motion for summary judgment was denied.

5         Our court of appeals has not addressed whether a settlement agreement with the SEC in
6   which the alleged perpetrator did not concede liability could satisfy Section 523(a)(19). The
7   bankruptcy court relied primarily on *Mollasgo v. Tills*, 419 B.R. 444, 453 (Bankr. S.D. Cal.
8   2009) (Judge Laura S. Taylor).  In *Tills*, an investor had sued the manager of a real estate
9   investment fund for securities law violations.  The dispute went to arbitration and culminated in
10  a settlement agreement requiring the manager to pay the agreement in full. The manager
11  entered the agreement "without conceding any fault or liability." The manager filed a Chapter 7
12  petition.

13        The investor moved for summary judgment seeking preclusion based on the settlement
14  agreement under Section 523(a)(19).  Judge Taylor rejected that argument, finding that the plain
15  language of Section 523(a)(19) limits is application to circumstances in which there has been a
16  securities "violation," not merely "resolutions of allegations of securities violations."  *Id.* at
17  451.  Judge Taylor held that Section 523(a)(19) allows us to establish a violation based on a
18  settlement agreement, but only where the settling party is a "wrongdoer."  *Id.* at 453.  She
19  confirmed that Senator Leahy's review of Section 523(a)(19) focused on culpability, which was
20  lacking in the settlement agreement.

21        The bankruptcy court herein relied primarily on *Tills* in holding that the SEC order
22  failed to preclusively establish a dischargeable debt, because Chui agreed to the SEC's consent
23  order without admitting liability.  A decision that Tradex contends constituted reversible error.

24        This order affirms the bankruptcy court's decision, but on a narrower ground than that
25  advanced by Chui here.  As the bankruptcy court held, "the SEC Order makes no mention of
26  [Tradex] or any debt owed to [Tradex].  The debt allegedly owed by [Chui] to [Tradex] clearly
27  does not 'result from' the SEC Order, and for that reason, cannot satisfy 523(a)(19)" (Appx.
28  Exh. 16 at 295).

7

Tradex assigns error to the bankruptcy court on that point because the bankruptcy court cited no authority for its conclusion, but Tradex cites none either. For all the record shows, the securities scheme leading to the SEC settlement involved different victims and Tradex is simply pretending it was a victim.

Although this order declines to address whether the SEC order could be used preclusively at all, it holds that the bankruptcy court correctly denied Tradex's motion for summary judgment on the narrower ground that the SEC order failed to establish a debt to Tradex that resulted from the alleged violation.

## CONCLUSION

For the reasons stated above, the bankruptcy court's denial of Tradex's motion for summary judgment is **AFFIRMED**. Judgment shall be entered accordingly. The Clerk shall please **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: September 30, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE